1  DAN SIEGEL, SBN 56400
2  EMILYROSE JOHNS, SBN 294319
   SIEGEL, YEE & BRUNNER
3  475 14th Street, Suite 500
   Oakland, California 94612
4  Telephone: (510) 839-1200
   Facsimile: (510) 444-6698
5
6  Attorneys for Plaintiffs
   NANCI ARMSTRONG-TEMPLE
7  BARBARA BRUST,
   and MICHELLE LOT
8
9              UNITED STATES DISTRICT COURT
10        FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
12 NANCI ARMSTRONG-TEMPLE,      )  Case No. **3:17-cv-06774-WHA**
   BARBARA BRUST, and           )
13 MICHELLE LOT                 )  FIRST AMENDED **COMPLAINT FOR**
                                )  **DAMAGES AND INJUNCTIVE AND**
14          Plaintiffs,         )  **DECLARATORY RELIEF**
                                )
15     vs.                      )  **(Civil Rights)**
                                )
16 CITY OF BERKELEY; ANDREW B.  )  **Demand for Jury Trial**
17 RATEAVER, lieutenant for the police )
   department of the City of Berkeley; SEAN )
18 TINNEY, officer for the police department )
   of the City of Berkeley; PETER HONG, )
19 sergeant for the police department of the )
   City of Berkeley; SAMANTHA    )
20 MARTINEZ, officer for the police )
   department of the City of Berkeley; )
21 MATTHEW MCGEE, officer for the police )
   department of the City of Berkeley; )
22 DARREN KACALEK, detective for the )
   police department of the City of Berkeley; )
23 KEVIN PETERS, officer for the police )
24 department of the City of Berkeley, )
                                )
25          Defendants.         )
26 _____ )
27                    **INTRODUCTION**
28     1.    In the winter of 2016, the City of Berkeley evicted members of an

intentional community of homeless men and women known as First They Came for the Homeless ("FTCftH") over a dozen times. Members of the encampment were outspoken about Berkeley's efforts to criminalize homelessness and were targeted for evictions as a result.

2.      Their plight became well known in the Berkeley community, and community members joined the encampment in being outspoken about the homelessness crisis and the unjust and inhumane way that encampments were treated in Berkeley.

3.      In the course of these evictions and raids, Berkeley police came to know individual members and supporters of FTCftH, and in some cases were aware of specific conditions and vulnerabilities.

4.      Two such community members were Barbara Brust, director of Consider the Homeless, and Nanci Armstrong-Temple, then-candidate for the District 2 seat of the Berkeley City Council.

5.      In November 2016, the City escalated its tactics during evictions of FTCftH. Officers increased arrests and the use of force. Encampment supporters including Ms. Brust and Ms. Armstrong-Temple, and encampment resident Michelle Lot were subject to such unlawful uses of force and false arrests.

6.      This suit arises from the violations of the constitutional and statutory rights that they suffered.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution) and § 1343(a)(3) (claims brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution), and 42 U.S.C. § 1983.

8.      The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under

1    Article III of the United States Constitution. The Court's jurisdiction over these claims is
2    invoked under 28 U.S.C. § 1367.

3        9.    Venue is proper in the United State District Court for the Northern
4    District of California pursuant to 28 U.S.C. § 1391(b)(1) because the defendants are
5    located in the Northern District of California and § 1391(b)(2) because all of the acts
6    and/or omissions complained of herein occurred within the Northern District of
7    California.

8                                    **PARTIES**

9        10.    At all times relevant hereto, plaintiff Nanci Armstrong-Temple was a
10   resident of the City of Berkeley, a community volunteer lending support to a homeless
11   encampment in Berkeley, and a candidate for Berkeley City Council.

12       11.    At all times relevant hereto, plaintiff Barbara Brust was a resident of the
13   City of Berkeley and a community volunteer lending support to a homeless
14   encampment in Berkeley.  Ms. Brust has a known and visible disability and walks with
15   the assistance of a cane.

16       12.    At all times relevant hereto, plaintiff Michelle Lot was a homeless resident
17   of Berkeley and member of the First They Came for the Homeless encampment.

18       13.    At all times relevant hereto, defendant City of Berkeley was a municipal
19   corporation, duly organized and existing under the laws of the State of California.
20   Under its authority, defendant City of Berkeley operates the Berkeley Police
21   Department and employs its officers, and the Department of Public Works and employs
22   its workers.

23       14.    At all times relevant hereto, defendant Andrew B. Rateaver was a
24   lieutenant police officer employed by the Berkeley Police Department in the City of
25   Berkeley. He is sued individually.

26       15.    At all times relevant hereto, defendant Sean Tinney was a police officer
27   employed by the Berkeley Police Department in the City of Berkeley. He is sued

28

individually.

16.    At all times relevant hereto, defendant Peter Hong was a police officer employed by the Berkeley Police Department in the City of Berkeley. He is sued individually.

17.    At all times relevant hereto, defendant Samantha Martinez was a police officer employed by the Berkeley Police Department in the City of Berkeley. She is sued individually.

18.    At all times relevant hereto, defendant Matthew McGee was a police officer employed by the Berkeley Police Department in the City of Berkeley. He is sued individually.

19.    At all times relevant hereto, defendant Darren Kacalek was a police officer employed by the Berkeley Police Department in the City of Berkeley. He is sued individually.

20.    At all times relevant hereto, defendant Kevin Peters was a police officer employed by the Berkeley Police Department in the City of Berkeley. He is sued individually.

## STATEMENT OF FACTS

21.    On November 4, 2016, numerous City employees, including police officers and members of code enforcement, public works, and homeless outreach raided the First They Came for the Homeless ("FTCftH") encampment on the corner of Adeline Street and Fairview Street, in Berkeley, California. The purpose of the raid was to evict the encampment and force its members to leave.

22.    The eviction occurred, as the ones before it had, at 5 a.m. It was dark and cold that morning, and residents were awakened by people yelling for them to pack up their belongings and leave.

23.    Defendant Lieutenant Andrew B. Rateaver, who asks residents of the encampment to call him "Rat," supervised the raid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24.    In the early morning of November 4, 2016, Lieutenant Rateaver briefed officers and other city employees from the Department of Public Works and the Parks Department, who were to assist in the eviction. This briefing included an explanation to employee participants that the City of Berkeley specifically instructed the eviction of the encampment by BPD.

25.    The City employees arrived at the encampment with ten police cars, City trucks, and a jail transport van. Police officers ordered that residents pack up their belongings, giving them fifteen minutes before they began to confiscate property and turn it over to Public Works.

26.    Almost immediately upon the police arrival, plaintiff Michelle Lot was falsely arrested.

27.    Ms. Lot emerged from her tent just about **five** minutes after the police arrived and looked over at her son who was already outside his tent and reaching for a nearby bull horn.

28.    Suddenly, she saw a dark figure lunge at him.

29.    The person lunging for her son did not identify him or herself and gave no instruction to her son before lunging at him.

30.    Instinctually, she reached for her son and wrapped her arms around his waist.

31.    Ms. Lot was quickly tackled by members of the Berkeley Police Department including Officer Matthew McGee and Officer Sean Tinney.

32.    When Ms. Lot was tackled, she fell hard on her right side. One officer dug his or her knee sharply into her back causing her unnecessary pain.

33.    As a result of the tackle, she has chronic pain in her right hip and knee. She also suffers from pain in her right shoulder due to the tackle and the subsequent tight application of handcuffs.

34.    Ms. Lot was arrested**,** transported to Santa Rita Jail in Dublin**,** and held

1    there until a community member posted bail for her to secure her release. The District

2    Attorney declined to charge her with any public offense.

3        35.    Plaintiff Barbara Brust arrived at the encampment in response to a call for

4    support. She has long worked with the residents of Berkeley's encampments through

5    her organization Consider the Homeless.

6        36.    At times, she has possessions at the encampment.

7        37.    During evictions, Ms. Brust often offers the use of her car so that residents

8    may securely pack up their belongings. Because Ms. Brust assists the encampment

9    during raids, she is known to Berkeley police, including Lt. Rateaver and Officer Sean

10   Tinney.

11       38.    Ms. Brust has **a** visible mobility impairment. She walks with a cane.

12   Members of the Berkeley Police Department including Lieutenant Rateaver **are aware**

13   of her physical disability.

14       39.    On information and belief, the Berkeley Police Department ha**s** a dossier

15   of information on Ms. Brust, which was provided to the officers present at the eviction

16   on November 4, 2016.

17       40.    During the early morning eviction, Ms. Brust stood nearby while residents

18   of the encampment loaded their belongings into her car.

19       41.    Ms. Brust noticed that police were collecting her property and the

20   property of the residents without providing receipts or an inventory of what was being

21   taken so that the residents could later reclaim confiscated property.

22       42.    Ms. Brust admonished the police for their actions clearing the

23   encampment and demanded that they provide her with a receipt for the items of hers

24   that they had removed.

25       43.    As she was insisting on an inventory, Lieutenant Rateaver approached Ms.

26   Brust, aggressively grabbed her thumb, stepped on her foot and knocked her to the

27   ground.

28

44.     He then stood over her and taunted her, telling her multiple times to "get up" while she informed him that she could not because she was disabled.

45.     She informed the officers that she did not want them to touch her and asked for her friends to be **allowed** to help her up.

46.     The officers ignored her request and lifted her to a standing position. Ms. Brust begged for her cane.

47.     Officer Sean Tinney held on to her cane while Lieutenant Rateaver and Officer Samantha Martinez attempted to move Ms. Brust by her arms, at Lieutenant Rateaver's instruction. Ms. Brust continued to beg for her cane.

48.     When she struggled to walk with the officers because she needed the use of her cane, Officer Tinney dropped her cane to the ground and picked up her feet.

49.     The officers carried her away while she pleaded for her cane.

50.     The officers did not inform her nor announce that she was under arrest before picking her up against her will and carrying her to a jail transport van.

51.     At the van, the officers pushed Ms. Brust up the stairs, still without the assistance of her cane, and exposed her breast in the process.

52.     She continued to plead for her cane and for the officers to pull her shirt down.

53.      She was detained for over an hour and prevented from communicating with anyone until she was finally cited and released. The District Attorney declined to charge her with any public offense.

54.     Ms. Brust's physical assault triggered a severe manic depressive episode, for which she sought therapy. She also suffered from Post-Traumatic Stress Disorder for which she had to seek treatment, although symptoms still linger.

55.     The condition in her knees for which she used a cane was worsened by the attack and she experiences an increase in pain. The worsening of her symptoms meant that she was forced to accelerate her knee replacement surgeries.

56.    She also has trigger finger in her thumb where Lieutenant Rateaver grabbed her.

57.    Plaintiff Nanci Armstrong-Temple also responded to assist encampment residents at their request.

58.    Ms. Armstrong-Temple was well known to the Berkeley Police Department because she was running for the District 2 seat **on the** Berkeley City Council, for which the election was three days away. Ms. Armstrong-Temple was openly critical of the Berkeley Police Department and declined to **attend** a meeting with the Berkeley Police Association for their endorsement**,** a snub that was well-publicized.

59.    On information and belief, the Berkeley Police Department **has** a dossier of information on Ms. Armstrong-Temple, which was provided to the officers present at the eviction on November 4, 2016.

60.    Ms. Armstrong-Temple protested Ms. Brust's unlawful arrest.

61.    In response to her verbal condemnation of the police behavior, several officers including Sergeant Peter Hong, Officers Kevin Peters, Matthew McGee, and Darren Kacalek used considerable force to wrestle Ms. Armstrong-Temple to the ground and drag her needlessly across the sidewalk by her limbs.

62.    Ms. Armstrong-Temple lay on the ground in agony as the officers piled on top of her and attempted to wrench her arms out from underneath her body.

63.    With the weight of the officers on her, Ms. Armstrong-Temple could not assist in placing her hands behind her back as officers instructed.

64.    Once officers placed her in handcuffs, the officers carried Ms. Armstrong-Temple to the jail transport van, while she was alerting them of pain to her arm and wrist.

65.    The officers did nothing to respond to her complaints of pain.

66.    She was transported to Santa Rita Jail in Dublin and held there until a family member posted bail to secure her release. The District Attorney declined to

charge her with any public offense.

67.    Ms. Armstrong-Temple suffers from depression, anxiety, and Post Traumatic Stress Disorder, and the abuse she suffered from the police exacerbated her symptoms. As a result of the officers' actions, she had to seek therapy.

68.    She also suffered injuries to her shoulders, wrists, ankle and rib for which she had to seek medical care and physical therapy. Her rib still causes her pain.

69.    Ms. Armstrong-Temple was a dance, creative movement, and musical theater teacher. As a result of her physical injuries, she had to quit teaching for six months and while she has returned to teaching, she remains on a reduced schedule.

70.    Ms. Armstrong-Temple's campaign also irrevocably suffered. The eviction occurred on the eve of the election for City Council, and the headlines of her arrest for the horrifically named "lynching," or removing a person from lawful police custody, made headlines.

71.    None of Ms. Armstrong-Temple's conduct could be construed as lynching, and the allegation by officers was egregious retaliation for her criticism of the Berkeley Police Department.

## EXHAUSTION OF ADMINISTRATIVE RELIEF

72.    On May 3, 2017, Barbara Brust, Nanci Armstrong-Temple and Michelle Lot submitted a claim pursuant to California Government Code section 910 *et seq.*

73.    On May 24, 2017, the City of Berkeley rejected their claim.

## FIRST CLAIM FOR RELIEF
## RETALIATION AGAINST PROTECTED ACTIVITY IN VIOLATION OF THE FIRST AMENDMENT
(By plaintiffs **Barbara Brust and Nanci Armstrong-Temple** against defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, and Officer Darren Kacalek)
(42 U.S.C. § 1983)

74.    Plaintiffs incorporate by reference paragraphs 1 through 73 above as though fully set forth herein.

75.    By virtue of the foregoing, plaintiffs **Barbara Brust and Nanci Armstrong-Temple** were engaged in constitutionally protected activity when defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, and Officer Darren Kacalek carried out the evictions of the First They Came for the Homeless ("FTCftH") encampment. By verbally protesting the police's unlawful actions and unjust treatment of the members of FTCftH, plaintiffs exercised their First Amendment rights to freedom of speech, freedom to assemble, and freedom of association.

76.    The assault and arrest experienced by plaintiffs was motivated by plaintiffs' constitutionally protected right to protest.

77.    The actions of defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, Officer Darren Kacalek were committed with an intent to chill and interfere with plaintiffs' constitutionally protected rights to speech, assembly, and association in violation of the First Amendment of the Constitution of the United States.

**SECOND CLAIM FOR RELIEF**
**USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT**
(By plaintiffs against defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, and Officer Darren Kacalek.)
(42 U.S.C. § 1983)

78.    Plaintiffs incorporate by reference paragraphs 1 through 77 above as though fully set forth herein.

79.    By virtue of the foregoing, defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, and Officer Darren Kacalek acted under color of law when they violently detained and arrested plaintiffs Barbara Brust, Nanci Armstrong-

Temple, and Michelle Lot without lawful justification and deprived plaintiffs of their right under the Fourth Amendment to the United States Constitution to be free of unreasonable seizure of his person by use of excessive force.

## THIRD CLAIM FOR RELIEF
## FAILURE TO TRAIN AND SUPERVISE
(By plaintiffs against defendant City of Berkeley.)
(42 U.S.C. § 1983)

80.     Plaintiffs incorporate by reference paragraphs 1 through 79 above as though fully set forth herein.

81.     Defendant City of Berkeley failed in its obligation to adequately train and supervise its police officers to refrain from subjecting persons being detained to excessive force.

82.     By virtue of the foregoing, defendant City of Berkeley was deliberately indifferent to the obvious consequences of its failure to train its police officers. As a result of inadequate training policies, officers employed by the City of Berkeley deprived Nanci Armstrong-Temple, Barbara Brust, and Michelle Lot of their rights, as set forth above.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990
(By plaintiff Barbara Brust against defendants Lieutenant Andrew B. Rateaver, Officer Sean Tinney and Samantha Martinez)
(42 U.S.C. § 12132.)

83.     Plaintiffs incorporate by reference paragraph 1 through 82 above as though fully set forth herein.

84.     At all times relevant to this action, defendants were each a "public entity" within the meaning of the ADA under 42 U.S.C. § 12131(1).

85.     Plaintiff Brust is a qualified individual with a disability within the meaning of the ADA and is substantially limited in the major life activities of walking and standing.

---

86.     Defendants have excluded plaintiff from participation in the services, programs and activities of the Berkeley Police Department, and have denied **her** the rights and benefits accorded to other persons, solely by reason of their disabilities in violation of the ADA.

87.     In addition, the Defendants have violated the ADA by failing or refusing to provide plaintiff with reasonable accommodations and other services related to her disability.

88.     As a direct and proximate result of the aforementioned acts, plaintiff Brust has suffered, and continues to suffer, hardship, injuries, and deteriorating physical and mental condition, due to defendants' failures to address accommodations, modifications, services, and access required for plaintiffs' disabilities.

### FIFTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA BANE ACT
(By plaintiffs against all defendants)
(California Civil Code § 52.1)

89.     Plaintiffs incorporate by reference paragraphs 1 through 88 above as though fully set forth herein.

90.     By virtue of the foregoing, defendants City of Berkeley, Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters, interfered by threats, intimidation, or coercion with the rights of Nanci Armstrong-Temple, Barbara Brust, and Michelle Lot secured by the Constitution of the United States and the Constitution of the State of California.

91.     By virtue of the foregoing, all defendants acted with malice and oppression and the intent to deprive and did deprive Nanci Armstrong-Temple, Barbara Brust, and Michelle Lot of their rights to be free from detention using excessive force.

### SIXTH CLAIM FOR RELIEF
### FALSE ARREST
(By plaintiffs against defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, Officer Darren Kacalek)

92.     Plaintiffs incorporate by reference paragraphs 1 through 91 above as though fully set forth herein.

93.     By virtue of the foregoing, defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Matthew McGee, Officer Samantha Martinez, Officer Kevin Peters, and Officer Darren Kacalek arrested and imprisoned plaintiffs without reasonable or probable cause to believe that they committed a crime.

94.     In doing so, defendants violated section 853.6 of the California Penal Code.

### SEVENTH CLAIM FOR RELIEF
### BATTERY BY A POLICE OFFICER
(By plaintiffs against all defendants.)

95.     Plaintiffs incorporate by reference paragraphs 1 through 94 above as though fully set forth herein.

96.     By virtue of the foregoing, defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters intentionally subjected plaintiffs Nanci Armstrong-Temple, Barbara Brust and Michelle Lot to harmful or offensive contact through the use of unreasonable force.

97.     By virtue of the foregoing, defendant City of Berkeley learned that Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters intentionally subjected plaintiffs to the use of unreasonable force and approved such conduct.

98.     By virtue of the foregoing, defendant City of Berkeley is liable for the acts of its employees, Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean

Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters, all of whom acted within the course and scope of their employment.

## EIGHTH CLAIM FOR RELIEF
## NEGLIGENCE
### (By plaintiffs against all defendants)

99.    Plaintiffs incorporate by reference paragraphs 1 through 98 above as though fully set forth herein.

100.    By virtue of the foregoing, defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters breached their duty to not use excessive force against plaintiffs Nanci Armstrong-Temple, Barbara Brust, and Michelle Lot, and this breach was the proximate cause for their harm.

101.    By virtue of the foregoing, defendant City of Berkeley learned Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters breached their duty to not use excessive force against plaintiffs and approved such conduct.

102.    By virtue of the foregoing, defendant City of Berkeley is liable for the acts of its employees, Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters, each of whom acted within the course and scope of his employment.

103.    By virtue of the foregoing, defendant City of Berkeley failed to use reasonable care in the training and supervision of Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters.

## DAMAGES

104.    As a result of the actions of defendants, plaintiffs have been injured and

have suffered damages as follows:

a.     They have been physically, mentally, emotionally, and financially injured and damaged as a proximate result of the wrongful actions of the public employees named above, and others;

b.     In taking the actions alleged above, defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters, engaged in conduct that was malicious, oppressive, and in reckless disregard of the rights of plaintiffs. Accordingly, plaintiffs are entitled to punitive damages against defendants Lieutenant Andrew B. Rateaver, Sergeant Peter Hong, Officer Sean Tinney, Officer Samantha Martinez, Officer Matthew McGee, Officer Kacalek, and Officer Kevin Peters.

WHEREFORE, plaintiffs request that this Court grant them relief as follows:

(1) General damages, in an amount to be determined;

(2) Special damages, in an amount to be determined;

(3) Punitive damages, in an amount to be determined;

(4) Reasonable attorney's fees under 42 U.S.C. § 1988;

(5) Injunctive relief;

(6) Costs of suit; and

(7) Such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: **March 23, 2018**

SIEGEL, YEE, & BRUNNER

By: _/s/EmilyRose Johns_____
EmilyRose Johns

Attorney for Plaintiffs
NANCI ARMSTRONG-TEMPLE
BARBARA BRUST,
and MICHELLE LOT